**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES WILLIAM NEAL, III, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA CITY, et. al, <br><br> Defendants. | Case No.: 1:14-cv-00269 - AWI - JLT <br><br> ORDER GRANTING PLAINTIFFS' MOTION TO MODIFY THE SCHEDULING ORDER <br><br> (Doc. 30) |

Plaintiffs seek modification of the Scheduling Order to permit them to take a deposition after the non-expert discovery deadline. (Doc. 30.) They argue that they need to take a deposition related to a document produced by Defendants after they said initially that they did not have any documents.

Defendants oppose the motion and argued that Plaintiffs should have known of the need to take the deposition weeks before the document was produced and they failed to act diligently to complete the needed discovery. Because the Court finds that Plaintiffs acted with reasonable diligence to obtain the discovery they claim they need, the Court **GRANTS** the motion to the limited extent of allowing the deposition of Michelle Jones only.

## I.     Relevant Procedural History

Plaintiffs initiated this action by filing a complaint on February 27, 2014, alleging that Defendants violated their constitutional rights arising under the Fourth and Fourteenth Amendments and for false arrest, abuse of process, and intentional infliction of emotional distress. (Doc. 1.)

1

1  Plaintiffs alleged that Mr. Neal was arrested on August 9, 2013, at which time the defendants searched
2  their home unlawfully "as there was neither any probable cause to conduct a search and [sic] nor was
3  there any other legal basis to conduct a search as the Plaintiff was neither on probation or on parole on
4  April 5, 2013 and nor did he consent." (*Id.* at 3.) Defendants filed their answers on March 26, 2014
5  and April 28, 2014. (Docs. 13, 15.)

6      On May 28, 2014, the parties filed a Joint Scheduling Report, setting forth the requested
7  deadlines for the action. (Doc. 16.) On June 12, 2014, the Court held a conference with the parties
8  and issued its Scheduling Order, adopting the requested non-expert discovery deadline of December
9  29, 2014. (*Compare* Doc. 16 at 7 *with* Doc. 18 at 1.) In addition, the Court informed the parties that
10 no written discovery motions were to be filed without prior approval from the Court. (Doc. 18 at 4.)
11 To obtain approval, the parties were required to meet and confer regarding the issues in dispute, and
12 seek a telephonic hearing with the Court. (*Id.*)

13     On July 17, 2014, Plaintiffs served a request for production of documents seeking "all
14 documents indicating at the time of [the] search, Plaintiff was on PRCS Supervision." (Doc. 31 at 4.)
15 On August 19, 2014, California City responded by attesting it "had no documents in [its] possession,
16 custody or control." (*Id.*) However, on October 29, 2014, Defendants served a supplemental response,
17 including a document which was, apparently, a CJIS or CLETS printout related to Mr. Neal's
18 supervisory status ("Exhibit C"). The document, printed on April 5, 2013, indicated that he was on
19 PRCS Community Supervision which, according to California Penal Code § 3453(f), meant he and his
20 residence was subject to search with or without a warrant.

21     The parties notified the Court of a discovery dispute related to the taking of a PMK deposition
22 which, in large part, sought information about the document produced in Defendants' supplemental
23 production. Counsel participated in telephonic conferences on December 11 and December 23, 2014.
24 (Docs. 28, 29.) The essential purpose of the deposition was to determine how the document was
25 created and what action, if any, the person took who created/printed the document once it was
26 obtained.

27     At the initial telephone conference, Plaintiff's counsel agreed to reformulate the deposition
28 notice and Defendants' counsel agreed to review it and respond. (Doc. 28) By the second telephone

2

conference with the Court, much of the previous dispute had been. (Doc. 29) However, though the conference resolved the issues related to the PMK deposition, it did not resolve Plaintiffs' counsel again stated belief of unfairness based upon Defendants' failure to produce the computer print-out timely. Plaintiffs' counsel felt it was imperative for Plaintiffs to be permitted to take the deposition of the dispatcher who reviewed the document described above and reported to Hayes that Mr. Neal was on probation. Because taking the deposition would need to be taken after the discovery deadline and counsel needed to meet and confer on the topic, the Court authorized filing the current motion in the event counsel could not come to an agreement. *Id.*

On December 28, 2014, Plaintiffs filed their motion, requesting that the Court's scheduling order be amended to allow Plaintiffs to take the deposition of Michelle Jones, the police dispatcher with whom defendant Shannon Hayes spoke to confirm whether Mr. Neal was on PRCS Supervision. (Doc. 31.) Defendants oppose modification of the scheduling order and argue Plaintiffs fail to establish good cause for it. (Doc. 56.)

## II.     Scheduling Orders

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by a court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (*quoting Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is

> upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted).  Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).  A party requesting modification of a scheduling order may be required to show:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### III.     Discussion and Analysis

Plaintiffs seek "to take the deposition of the police dispatcher to whom Defendant Officer Shannon Hayes spoke to on April 5, 2013, purportedly for the purpose to confirm Plaintiffs PRCS supervision status." (Doc. 31 at 3.)  Plaintiffs assert that "[t]he request for this deposition was made in light of the production of a copy of a computer screen (Exhibit C) that Defendants only produced on October 29, 2014, on which they rely for their position that the search was lawful. (*Id.*)  According to Plaintiffs, "Exhibit C" was produced "only after depositions were taken of the individual Defendants in the action," and they "should be allowed to complete discovery as to the source of the document and the Defendants' interpretation of what that document means." (Doc. 31 at 6.)  Plaintiffs assert the deposition of Michelle Jones is relevant to the claims and defenses in this action because "it is assumed that she reviewed Exhibit C to ascertain that Plaintiff was on PRCS Supervision and advised Officer Hayes of that 'fact'." (*Id.* at 8.)

On the other hand, Defendants assert the scheduling order should not be amended because they "were not reasonably diligent in seeking the purported deposition." (Doc. 31 at 8, emphasis omitted.)  Defendants report that Plaintiffs learned about the inquiry made to the dispatcher on September 9, 2014, when John Bishop testified that "it is generally the dispatcher that compiles the documents regarding the probation sweeps" and that "Hayes had contacted the dispatcher to inquire as to the PRCS

status of Plaintiff James Neal." (*Id.* at 10, citing Doc. 31-4, Bishop Depo. 21:12-22, 25:4-7, 41:9-42:6.) Bishop was not " a hundred percent positive" that the dispatcher on duty was Michelle Jones on the day of the search. *Id*. In addition, on October 13, 2014, Christopher Morgan testified that before the search, someone compiled a packet of information which included the document at issue, printed from the "county-wide" computer system to which the dispatchers with the California City Police Department, had access. (Doc. 31 at 11; Doc. 31-5 at 6, Morgan Depo. 21:12-22, 96:1-12.) Morgan could not recall to which dispatcher he spoke on that date but knew it was a female. *Id*. Morgan testified further that he had prior knowledge that Neal was on probation and, though he did not know most of the terms of the probation, he knew that Neal was subject to search. Id.

Shannon Hayes testified he spoke to the dispatcher while at the scene of the search on April 5, 2013, to verify Neal's probationary status and the dispatcher told him "that the computer system stated that he was still on P.R.C.S." (Doc. 31-6 at 6, Hayes Depo. 21: 6-25.) Like Morgan, Hayes was uncertain whether he spoke to Michelle Jones but thought it may have been her. *Id.* Based upon these facts, Defendants assert that "Plaintiffs were aware of the dispatcher's interaction with Defendant Hayes and verification of Plaintiff James Neal's PRCS status as of September 9, 2014, nearly four full months prior to the discovery cutoff." (Doc. 31 at 11, emphasis omitted.)

Plaintiffs do not dispute they learned of the inquiry made to a dispatcher regarding the PRCS status as early as September 9, 2014. Further, they do not dispute they learned the identity of Ms. Jones before the document was produced but explain that her deposition did not seem necessary because at that time, though Defendants had no documents demonstrating that Neal was on probation, Plaintiffs had documents which clearly showed he was not. Until the document was produced, counsel, seemingly, felt Plaintiffs were on such strong footing that the deposition of the dispatcher was unnecessary but production of the document changed this. The Court makes no comment on this tactical discovery decision which, in hindsight seems flawed, but counsel clarified (as he did at the telephonic conferences with the Court) that the primary purpose of the PMK notice was to determine who obtained the information from the computer system, how it was obtained and what he or she did with that information once it was obtained.

On the other hand, Defendants make much of the fact that as early as September 9, 2014,

Bishop testified, as set forth above, that there was a document that had been printed out reflecting that Neal was on probation. (Doc. 31 at 10) However, just three weeks before, Defendants had responded to discovery indicating that there was no document. Id. at 4. It is not inconceivable that Plaintiffs felt no need to delve further given this circumstance. However, presumably counsel for both sides learned at the same time, at Bishop's deposition, that the document had been printed off the computer system and, a reasonable inference is, that it could be printed off again. Despite this, neither attorney took steps to obtain the document but, importantly, it was Defendants who had an affirmative duty to produce it. Instead, they waited more than seven weeks to do so.[1] Id.

Federal Rules of Civil Procedure 26(e)(A) requires, parties to supplement their responses to discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . ." Without explanation for the seven-week delay, the Court cannot determine whether this was reasonable and consequently, whether the supplementation was timely.

Consistently, Plaintiffs have complained that they conducted their discovery based upon their understanding that the document did not exist. Indeed, the joint statement indicates that the depositions of key players—Bishop, Morgan and Hayes—all occurred after Defendants asserted they had no documents detailing whether Neal was on probation and it was not until after the depositions were completed that Defendants produced it. The Court does not believe anything nefarious occurred but, even still, the timing of the production eliminated relevant lines of deposition questioning. For example, as counsel argued at the hearing, if he had the computer printout at the depositions, he could have questioned the officers about what parts of the document meant. In particular, counsel would have questions the officers what it meant that the document stated that Neal's supervision was not grounds for his detention or arrest.[2]

---

[1] Counsel was not clear at the hearing when he discovered that the document at issue here *did* exist and had not been produced. The Court is also unclear that when counsel heard Bishop testify that a document had been printed out from the computer system to which the dispatchers had access that detailed that Neal was on supervision (Doc. 31-4 at 7), why this did not trigger a recognition that, even though they believed that the document used in the pre-search packet no longer existed, Defendants could have had a copy of the document printed out.

[2] This seems contrary to California Penal Code § 3453(s).

Within two weeks of receiving the supplemental response, Plaintiffs served their PMK deposition notice. Though this was probably not the most efficient method of ferreting out the details behind the creation of the document or its meaning, the Court does not find that Plaintiffs failed to act with diligence once they received the document.

Defendants have taken the position that, other that the depositions of Bishop and Hayes, they have no further information related to the document and, as a result, have indicated they will not produce a person responsive to the PMK deposition notice on certain topics. Because everyone agrees that the dispatcher produced a document before the search indicating that Neal was on probation and spoke to Morgan and/or Hayes and verified Neal this fact, it appears that the dispatcher has information—or did at one time. Though the dispatcher at issue may have no current memory of doing these things—and, presumably, she does not in light of the City's response to the PMK deposition notice—this does not mean that Plaintiffs are not entitled to verify this fact.

## IV.     Order

Plaintiffs have demonstrated good cause required by Rule 16 to modify the scheduling order to take the deposition of Michelle Jones. Thus, the Court **ORDERS**:

1.     Plaintiff's motion to amend the scheduling order (Doc. 30) is **GRANTED** to the extent that Plaintiffs are granted leave to take the deposition of Michelle Jones. Counsel SHALL use all reasonable efforts to take the deposition of Michelle Jones but in no event SHALL the deposition of Michelle Jones be taken later than February 13, 2015.[3]

2.     No further modifications to the case schedule are authorized.

IT IS SO ORDERED.

Dated:   **January 20, 2015**                    **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE

---

[3] Despite the fact that the Court is not placing explicit limits on the contours of the deposition, it anticipates that the deposition of Ms. Jones will be limited to foundational information and questions related to the document, including its creation, printing and use, and her communications about the document.