Neal v. California City, et al.
Case No. 1:14-cv-00269-AWI-JLT
Evidence in Support of Rule 56 Motion
Exhibit "15"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

| | |
|---|---|
| JAMES WILLIAM NEAL III and CORDELIA NEAL,  )<br>  )<br>               Plaintiff,  )<br>   v.                         )  Case No.<br>                              )<br>CALIFORNIA CITY, a public entity; )  1:14-CV-00269-AWI-JLT<br>CALIFORNIA CITY POLICE        )<br>DEPARTMENT, an agency of the  )<br>California City; CHRISTOPHER   )<br>MORGAN, a public employee;    )<br>DETECTIVE BISHOP, a public    )<br>employee; SERGEANT HAYES, a   )<br>public employee; JESSE        )<br>HIGHTOWER, a public employee; )<br>Does 1-10,                    )<br>                              )<br>               Defendants.    )<br>_____) | |

Deposition of

MICHELLE JONES

Thursday, January 22, 2015

OUR FILE NO.:
19-15B

Reported by:
ANGELA G. WHITACRE, CSR
LICENSE NO. 11338

SHIRLEY R. FORSYTH AGENCY
CERTIFIED SHORTHAND REPORTERS
12561 CASCADE CANYON DRIVE
GRANADA HILLS, CALIFORNIA 91344
(213) 381-1341

```
 1                          I N D E X
 2   DEPOSITION OF MICHELLE JONES
 3   Thursday, January 22, 2015
 4   EXAMINATION BY:                                        Page
 5            MR. GARROTTO                                    5
 6
 7
 8
 9                        E X H I B I T S
10   Exhibit              Description                       Page
11      1     Printout of Computer Screen from               18
12            CLETS system
13
14
15
16
17
18
19
20
21
22
23
24
25
```

 1            BE IT REMEMBERED THAT, pursuant to the laws pertaining
 2   to the taking and use of depositions, and on Thursday,
 3   January 22, 2015, commencing at the hour of 11:15 a.m. thereof,
 4   at City Hall of California City, 21000 Hacienda Boulevard,
 5   California City, California, before me, Angela G. Whitacre, a
 6   Certified Shorthand Reporter of the State of California, there
 7   personally appeared
 8                         MICHELLE JONES,
 9   called as a witness by the Plaintiffs, who, being by me first
10   duly sworn/affirmed, was thereupon examined and testified as is
11   hereinafter set forth.
12                              - - -
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                          APPEARANCES
 2
 3          LAW OFFICES OF GARROTTO & GARROTTO, 1925 Century Park
 4   East, Suite 2000, Los Angeles, California 90067, represented by
 5   GREG W. GARROTTO, ESQ., appeared as counsel on behalf of the
 6   Plaintiffs.
 7          LAW OFFICES OF FERGUSON, PRAET & SHERMAN,
 8   1631 East 18th Street, Santa Ana, California 92705, represented
 9   by ALLEN CHRISTIANSEN, ESQ., appeared as counsel on behalf of
10   the Defendants.
11                            - - -
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   THURSDAY, JANUARY 22, 2015                           11:15 A.M.
 2                              -oOo-
 3                        P R O C E E D I N G S
 4
 5                           MICHELLE JONES,
 6          having been duly sworn, testified as follows:
 7
 8                            EXAMINATION
 9   BY MR. GARROTTO:
10        Q.   Would you state your name?
11        A.   Michelle Jones.
12        Q.   And by whom are you employed?
13        A.   California City Police Department.
14        Q.   And how long have you been employed by the
15   California City Police Department?
16        A.   Three years, and then came back again for about --
17   been there for two years again.
18        Q.   Okay.  So when was your original employment date?
19   When did you first start employment?
20        A.   Very first time that I started employment was July of
21   2007.
22        Q.   So -- and then you worked for about three years at
23   that point?
24        A.   Yes.  I left in June 2010.
25        Q.   Okay.  And then when did you, I'll say, re-up?
```

1  first inputted into the RIM system?

2      A.  It would only be if we came across it from the CLETS
3  or the CJIS databases.

4      Q.  And under what circumstances would you be coming
5  across it in the CLETS -- CLETS, or the CJIS system?

6      A.  If we ran that subject for something.

7      Q.  Okay.  Would the -- in April of 2013 -- or before
8  April 5th, 2013, would one of your responsibilities be updating
9  the information within the RIM system?

10     A.  Yes.

11     Q.  And how would that be done?

12     A.  That's -- you can input it to where it set the flags
13 off, like I was explaining.  But then, also, I can go into a
14 section in RIMS and just pull everyone who's listed on PRCS or
15 parole or probation.  And then from that point, I can run them
16 through the databases to see if it's still current, or maybe
17 it's inactive now and I can remove them from the list.

18     Q.  In -- in -- prior to April 5th, 2013, was there some
19 procedure by which there would be, I'll say -- and I'm going to
20 use the word "regular update" of persons under parole, on
21 probation, or under PRCS?

22     A.  There was not anything regular that was something
23 that -- when I train, I train my dispatchers that we don't go
24 off the red flags, but that's to give us a heads-up -- hey,
25 look into it when you run this person.

1    Q.  Okay.  And in April of 2013, if an officer had a
2  question about somebody's, I'll say, parole or probation or
3  PRCS status, to your knowledge, how would that question be
4  addressed?  I mean, first of all, would it be addressed to you?
5    A.  If I was the dispatcher on, yes.
6    Q.  Okay.  And what was your -- and prior to April 5th,
7  2013, what would be your procedure by which to determine that
8  person's status?
9    A.  I would run them through the CLETS system.  I would
10 start by bringing up their profile in RIMS that might give me
11 any flags so I knew what to be looking for specifically.
12         But then I would take that information and run them
13 through CLETS.  Depending on probation and PRCS, if they're
14 looking for Kern County, I would also run them through CJIS.
15   Q.  Would there ever be circumstances in -- prior to
16 April 5th, 2013, when you would receive an inquiry from an
17 officer requesting what somebody's status was, or you would
18 just run them through RIMS?
19   A.  No.
20   Q.  So it sounds like, then, in terms of the RIM system,
21 in terms of a person's status, the major purpose of the RIM
22 system was to alert you that this person might have a status?
23   A.  Yes.
24   Q.  Okay.  Prior to April 5th, 2013, do you know if you'd
25 ever run a computer check on James William Neal, III?

1    contacted to verify the status?
2       A.   Yes.
3       Q.   Okay.  And that would be the status whether he's on
4    probation or PRCS; correct?
5       A.   Yes.  Or not on anything at all.
6       Q.   Okay.  And then it says, after "CONTACT COUNTY
7    PROBATION TO VERIFY CURRENT STATUS," "SUBJECT NO LONGER UNDER
8    CDCR JURISDICTION."
9            Does that mean he's not under parole?
10      A.   Correct.
11      Q.   Okay.  And then it says, "SUBJECT WILL NOT BE
12   RETURNED TO CDCR CUSTODY FOR VIOLATIONS OF PRCS CONDITIONS."
13   And then, "CDCR WARRANT UNIT CANNOT PLACE HOLD ON SUBJECT";
14   correct?
15      A.   Correct.
16      Q.   And that just means that CDCR has no supervision
17   responsibilities over this person at the time of this
18   particular inquiry?
19      A.   Yes.
20      Q.   Okay.  Now, in -- in April of 2013, when an officer
21   would request a query as far as a particular person, would
22   you -- and this information came up such as we see on this
23   screen -- would you tell the officer that the probation
24   department should be contacted to verify current status?
25      A.   No.

1    Q.   Okay.  Would you do the verification?

2    A.   Yes.

3    Q.   How would you do that?

4    A.   I would do that through our CJIS system.  When I
5  talked to Kern County Probation, they gave me the steps to
6  check a subject for the most up-to-date.  Since I am -- we're
7  in Kern County, we're able to use that system.

8         They gave me the directions of how to get to that
9  screen within our CJIS, and how to read whether he's been made
10 inactive and no longer on PRCS, or if he's still active and
11 still on PRCS.

12   Q.   So as of April 5th, 2013, it would have been your
13 responsibility to contact probation or --

14        Let me ask you this:  When --

15        Let me strike that and ask this question:

16        On April 5th, 2013, when this information came up
17 such as we see in this printout, would you have contacted
18 probation, or would you have gone directly to CJIS to verify
19 his PRCS status?

20   A.   I would have gone directly to CJIS to verify because
21 that's how Probation told me that they would check, too, if I
22 was calling.

23   Q.   And what information would come up on that screen?

24   A.   All of the -- the name, the basic descriptors --
25 pretty much everything's that's listed for height, weight,

1  programs. From there, I can immediately flip my mouse over to
2  the CJIS screen.
3         My returns can get back to the officers probably, I
4  would say, within a minute of them giving me the initial
5  information or request.
6     Q.  Okay. Did you ever hear from anyone within the
7  California City Police Department that Mr. Neal was not under
8  PRCS supervision as of April 5th, 2013?
9     A.  Not to my recollection.
10    Q.  Okay. And on April 5th of 2013, do you know what
11 shift you would have worked?
12    A.  I believe I worked the sweep, whatever the hours were
13 that were -- I was usually the primary person to work when they
14 did these big sweeps.
15    Q.  Okay. And as of April 5th, 2013, were there any
16 circumstances -- well, I think you already said it before --
17 but the only circumstance where an officer would directly
18 access the system would be when a dispatcher wasn't available?
19    A.  The officer -- some of the officers have access to
20 the system. I believe right now it's just our sergeants. But
21 if they need it to access it, they have the ability. I do know
22 they have limited training for that.
23    Q.  Okay. As of April 5th, 2013, do you know if
24 Shannon Hayes would have had access?
25    A.  I do not know.

CERTIFICATE OF REPORTER

I, ANGELA G. WHITACRE, a Certified Shorthand Reporter of the State of California, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: **JAN 26 2015**

_Angela G. Whitacre_
ANGELA G. WHITACRE, CSR NO. 11338