1
2
3
4
5
6
7
8
9

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

10   JAMES WILLIAM NEAL III and          1:14-cv-00269-AWI-JLT
     CORDELIA NEAL,
11                                       **ORDER GRANTING IN PART AND**
                                         **DENYING IN PART DEFENDANTS'**
12              Plaintiffs,              **MOTION FOR SUMMARY**
                v.                       **JUDGMENT**
13
     CALIFORNIA CITY, a public entity;
14   CHRISTOPHER MORGAN, a public        (Doc. #38)
     employee; DETECTIVE BISHOP, a
15   public employee; SERGEANT HAYES,
     a public employee; JESSE HIGHTOWER,
16   a public employee; and DOES 1-10,
17
                Defendants.
18

19   _____/

20                     **I. Introduction**

21       Plaintiffs James William Neal III and Cordelia Neal (collectively "Plaintiffs") bring this

22   civil rights action against the City of California City, and law enforcement officers Christopher

23   Morgan, John Bishop, Shannon Hayes, Jesse Hightower, and Does 1-10 (collectively

24   "Defendants"), relating to alleged violations of Plaintiffs' constitutional rights in conducting

25   searches on April 5, 2013, and September 19, 2013, the former of which resulted in Mr. Neal's

26   arrest. Plaintiffs have alleged three claims against Defendants: (1) deprivation of Plaintiffs'

27   Fourth Amendment right to freedom from unreasonable search and Fourteenth Amendment right

28

                                          1

to due process[1] in violation of 42 U.S.C. § 1983; (2) false arrest; and (3) abuse of process. On March 9, 2015, Defendants moved for summary judgment as to all three claims. Plaintiff opposed summary judgment as to the first and second claims. For the following reasons, Defendants' motion for summary judgment will be granted in part and denied in part.

## II. Background

A multi-agency probation and parole compliance sweep took place in California City on April 5, 2013. *See* Joint Statement of Undisputed Facts ("JSUF") at ¶ 1. Mr. Neal was included on the list of persons to be searched. JSUF at ¶ 2. On that date, Plaintiffs were subjected to a warrantless search of their home based on the mistaken belief, held by the law enforcement officers who conducted the search, that Mr. Neal was on Post-Release Community Supervision ("PRCS").[2] JSUF at ¶¶ 3-4; Defendants Separate Statement of Undisputed Facts ("DSSUF") at ¶¶ 9-10. Defendants have submitted evidence, in the form of deposition transcripts from the involved officers and the Kern County Police Dispatcher then on call, tending to indicate that the officers conducting the search attempted to determine Mr. Neal's PRCS status prior to the search and again once they arrived at his residence. DSSUF at ¶¶ 10, 13-16.[3] Specifically, Defendants Morgan[4] and Hayes both contacted the California City police dispatch prior to the search. DSSUF at ¶¶ 13, 15. Defendant Morgan indicated that his verification of PRCS status with dispatch occurred just outside Mr. Neal's front door, prior to entry of the home. Morgan Depo. 32:15-24. Defendant Hayes indicated that he initially relied on paperwork provided by a non-defendant officer, Lieutenant Huizar, which indicated that Mr. Neal was on PRCS. Deposition of

---

[1] Neither party has discussed the Fourteenth Amendment claim in their moving papers.
[2] PRCS is a relatively new designation, resulting from California Assembly Bill ("AB") 109, signed into effect in 2011. AB 109 implemented a "realignment" policy whereby offenders convicted of non-violent and non-serious offenses released from the California Department of Corrections and Rehabilitation ("CDCR") are supervised by county probation departments rather than by the parole department of the CDCR. *See generally* Couzens & Bigelow, Felony Sentencing After Realignment (February 2015), located at http://www.courts.ca.gov/partners/documents/felony_sentencing.pdf (last accessed June 19, 2015).
[3] Plaintiff indicates that this fact is "disputed" but only asserts the objection that the evidence is inadmissible insofar as it seeks to prove that Mr. Neal was actually on PRCS as the time of the search. It is undisputed that Mr. Neal was *not* actually on PRCS at the time of the search. Because Plaintiff has submitted no evidence to the contrary, it is also undisputed that the Defendant officers *believed* that Mr. Neal was on PCRS on April 5, 2013.
[4] Defendant Morgan indicated that he or Defendant Bishop contacted dispatch over the radio to confirm Mr. Neal's probation status. Deposition of Christopher Morgan, Doc. 38-9 ("Morgan Depo.") at 31:3-32:10.

Shannon Hayes, Doc 38, ("Hayes Depo.") at 18:16-21. Although he did not arrive at the Neal home until after the search had commenced, when he did arrive, Defendant Hayes contacted the police dispatcher to confirm Mr. Neal's PRCS status. Hayes Depo. at 21:1-23.

Police dispatcher, Michelle Jones, was the dispatcher on the date of the search. *See* Deposition of Michelle Jones, Doc. 43-2, ("Jones Depo.") at 20:2-6. Ms. Jones described that her duties included determining for officers whether an individual that the officer has made contact with is on parole, probation, or PRCS. Ms. Jones identified three database systems available to California City law enforcement: (1) the RIMS system[5], the CJIS system, and the California Law Enforcement Telecommunication System ("CLETS"). Jones Depo. at 17:6-14. Ms. Jones did not recall running a report regarding Mr. Neal. Jones Depo. at 26:13-15. However, Ms. Jones indicated, based on the "RIMS report to query" document presented to her (Doc. 43-2 at 26), that she accessed Mr. Neal's profile through the RIMS system, then – using RIMS – ran that profile for "James Neal" with a date of birth of September 26, 1960, through the CLETS system. The printout, bearing the run date of April 5, 2013 at 3:49 p.m., indicates that the CLETS system returned a hit. *See* Doc. 43-2 at 26. The relevant portion of that hit begins by indicating that Mr. Neal, on the date of the query, was and had been on PRCS since January 7, 2012. Jones Depo. at 29:13-18. However, the supervision discharge date was listed as "99999999." Doc. 43-2 at 26; *see* Jones Depo. at 25:1-7, 29:19-23. Ms. Jones indicated that the value entered for discharge date means that there was no scheduled discharge date. Jones Depo. at 29:19-23. The report also indicated that county probation should be contacted to verify Mr. Neal's current PRCS status. Doc. 43-2 at 26; *see* Jones Depo. at 34:6-35:11. Ms. Jones indicated that her procedure at the time would have been to run a CJIS report to confirm PRCS status based on that information.

---

[5] Based on Ms. Jones description, the RIMS system appears to be a Kern County specific program that is designed to place a dispatcher or officer on notice that a person who an officer has made contact with may be on parole, probation, or PRCS, or have some other status classification, or an outstanding warrant. However, RIMS is not a standalone system; an officer may have to run a query – using RIMS - through either CLETS or CJIS for complete information. *See* Jones Depo. 17:6-23, 18:11-21, 20:16-22:9. It therefore appears to the Court that the RIMS system is both a local database for the Kern County Police Department and a conduit for the Police Department to search other databases.

1  Jones Depo. at 34:20-35:22. She indicated that CJIS inquiries were not memorialized unless a

2  specific request was made to do so. Jones Depo. 37:12-21.

3     Based on the records inquiries described above, it appears that Ms. Jones informed at

4  least Defendant Hayes and possibly Defendant Morgan (and/or Defendant Bishop), that Mr. Neal

5  was on PCRS. Morgan Depo. at 32:8-9; Hayes Depo. at 21:6-23.

6     During the search, a controlled substance was discovered and Mr. Neal was placed under

7  arrest. DSSUF at ¶¶ 17-18.[6] It was later discovered that Mr. Neal was not actual on PRCS at the

8  time of the search. DSSUF at ¶ 19. He was released from custody and the charges against him

9  were dropped.

10     Approximately five months later, law enforcement obtained a warrant for search of the

11  Neal home. DSSUF at ¶ 28; Doc. 38-15 at 10-20. The search warrant was executed on

12  September 19, 2013 but no controlled substances or contraband were discovered. JSUF at ¶ 6.

13  During the search Plaintiffs home Defendant Morgan – a male police officer – searched Mrs.

14  Neal when she sought permission to reenter the home to use the restroom. Deposition of Cordelia

15  Neal, Doc. 43-9 ("C.Neal Depo.") at 31:16-32:25; *but see* Morgan Depo. at 38:25-39:5

16  (Defendant Morgan does not remember conducting any search of Mrs. Neal). The search took

17  only "a few seconds." C.Neal Depo. at 32:8-10.

18     Plaintiffs contend that the Defendants destroyed Plaintiffs' personal property during the

19  course of both searches. Doc. 39 at 7; *see* C.Neal Depo. at 47:12-53:17

20             **III. Legal Standard**

21     The Federal Rules of Civil Procedure provide for summary judgment when "the movant

22  shows that there is no genuine dispute as to any material fact and the movant is entitled to

23  judgment as a matter of law." Fed. R. Civ. P. 56(a). Early resolution of issues that present no

24  dispute genuine dispute of material fact serves a principal purpose of Rule 56 – disposing of

25  unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

26

27    [6] Plaintiff contests the legality of the search, not that an officer discovered the controlled substance in Mr. Neal's

28  home.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323; *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex,* 477 U.S. at 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, *see Liberty Lobby,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982). The court must construe all facts and inferences in the light most favorable to the non-moving party. *See Liberty Lobby*, 477 U.S. at 255. However, conclusory and speculative testimony does not raise a genuine factual dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738–39 (9th Cir. 1979).

### IV. Discussion

Based on the below discussion, this Court will grant summary adjudication: (1) in favor of the City of California City on Plaintiff's *Monell* claim – to the extent that one is articulated – because Plaintiffs failed to submit evidence indicating that a policy, custom, or practice led to the

1   alleged constitutional deprivations, (2) in favor of the individual defendants as to the Plaintiffs'

2   claim that the searches of Plaintiffs' home were unreasonable; Defendants are entitled to

3   qualified immunity with respect to both searches; (3) in favor of all defendants as to Mr. Neal's

4   false arrest claim because probable cause to arrest existed at the time of the arrest, (4) in favor of

5   all defendants as to Mr. Neal's state law false imprisonment claim based on statutory immunity,

6   and (5) in favor of all defendants as to Plaintiffs' abuse of process claims. This Court will deny

7   Defendants' motion for summary judgment regarding Defendants' destruction of Plaintiffs'

8   property and the pat down search of Mrs. Neal.

9   A. Plaintiff's Claims Against the City of California City

10      This Court has identified no discernable *Monell* type claim from the operative complaint.

11  However, Plaintiffs did name the City of California City[7] as a defendant, and as Defendants

12  correctly note, the only way that the City could be liable for a civil rights violation as a direct

13  defendant is pursuant to *Monell*. *See Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006)

14  (explaining that municipal liability under § 1983 exists only for constitutional violations

15  occurring pursuant to an official government policy or custom).[8] The Ninth Circuit recently

16  summarized the fundamental jurisprudence of § 1983 municipal liability:

17          [A]lthough § 1983 imposes liability only on "persons" who, under color of
18          law, deprive others of their constitutional rights, the Supreme Court has construed
            the term "persons" to include municipalities such as the County. [citation]. A
19          municipality is responsible for a constitutional violation, however, only when an
            "action [taken] pursuant to [an] official municipal policy of some nature" caused
20          the violation. [citation]. This means that a municipality is *not liable* under § 1983
21          based on the common-law tort theory of respondeat superior. [citation]. On the
            other hand, the official municipal policy in question may be either formal or
22          informal. [citations and parenthetical explanations].

23

24  ─────────────
    [7] Plaintiffs also initially named the California City Police Department but agreed to its dismissal on January 27,
25  2015. Doc. 37.
    [8] Plaintiffs appear to fundamentally misunderstand municipal liability under § 1983. *See* Complaint at ¶ 5 (referring
26  to alleged constitutional violations by California City Police Officers giving rise to liability under the doctrine of
    respondeat superior). It is fundamental law of constitutional torts that "a municipality cannot be held liable solely
27  because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a
    respondeat superior theory." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Castro v. Cnty.*
28  *of Los Angeles,*, 785 F.3d 336, 350 (9th Cir. 2015).

[¶]

> An informal policy […] exists when a plaintiff can prove the existence of a widespread practice that, although not authorized by an ordinance or an express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." [citation]. Such a practice, however, cannot ordinarily be established by a single constitutional deprivation, a random act, or an isolated event. [citation]. Instead, a plaintiff … must show a pattern of similar incidents in order for the factfinder to conclude that the alleged informal policy was "so permanent and well settled" as to carry the force of law. [citation].

*Castro v. Cnty. of Los Angeles*, 785 F.3d 336, 350-51 (9th Cir. 2015) (citations omitted). For the first time, in their opposition to motion for summary judgment, Plaintiffs allege that the City of California City, despite its "state policy whereby a person's property would be treated with dignity and respect," (Doc. 39 (citing Plaintiff's Separate Statement of Undisputed Facts ("PSSUF") at ¶ 8) maintains an informal policy or custom of inadequately training its officers to follow that policy. Plaintiffs contend that this claim was set forth Paragraph 9 of their Complaint and "is supported by the evidence in this matter." Doc 39 at 15. Neither contention is accurate. Paragraph 9 of the Complaint – in its entirety – reads:

> 9. At the time of said arrest, the Plaintiffs' home was searched unlawfully as there was neither any probable cause to conduct a search nor was there any other legal basis to conduct a search as the Plaintiff was neither on probation or on parole on April 5, 2013 and nor did he consent. Furthermore said search was conducted in a manner as to damage or destroy real and personal property of the Plaintiffs. The body search of Plaintiff, Cordelia Neal that was conducted on April 5, 2013 was also conducted in an inappropriate and intrusive manner that had no legitimate purpose of law enforcement and was unreasonable and performed for the sole purpose of demeaning and harassing said plaintiff.

It is unclear to the Court which part of Paragraph 9 should have placed Defendants on notice that Plaintiffs sought to allege that the City of California City or the California City Police Department had a policy, custom, or widespread practice of either destroying property during a search or inadequately training their officers. Plaintiffs' failure to clearly allege that Defendants' maintained any sort of unconstitutional policy is fatal to the *Monell* claim (articulated for the first time in their opposition to Defendants' motion for summary judgment). That said, "[a]n addition of new issues during the pendency of a summary judgment motion can be treated as a motion for

1  leave to amend the complaint." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (citation

2  omitted). Because the claims articulated in Plaintiffs' complaint were not refined by motions to

3  dismiss, this Court would grant leave to amend if such amendment is not futile, *see Lopez v.*

4  *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citations omitted); *United States v.*

5  *Corinthian Colleges,* 665 F.3d 984, 995 (9th Cir. 2011), and it does not prejudice the

6  Defendants, *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).[9]

7        Even assuming that a *Monell* claim was adequately set forth in the complaint, Plaintiffs'

8  have submitted no evidence to support any finding of a failure to train California City officers.

9  Plaintiffs did submit evidence which tends to indicate that law enforcement destroyed some of

10  their property during each of the searches of the Neal home. C.Neal Depo. at 42:23-52:11.

11  However, the two instances reported by Mrs. Neal are inadequate to show a larger policy or

12  custom. "'Liability for improper custom may not be predicated on isolated or sporadic incidents'

13  and that '[t]he custom must be so "persistent and widespread" that it constitutes a "permanent

14  and well settled city policy." ' " *See Hunter v. Cnty of Sacramento*, 651 F.3d 1225, 1233-1234

15  (9th Cir. 2011) (citations omitted). Evidence of a custom or practice, could be "inferred from

16  widespread practices or evidence of repeated constitutional violations for which the errant

17  municipal officers were not discharged or reprimanded." *Id.* (citations and quotations marks

18  omitted). Evidence of a widespread and persistent policy is absent.

19        Assuming even further that a custom or practice existed under which California City law

20  enforcement officers were permitted to destroy property during the course of a search, that policy

21  may not violate Fourth Amendment. "Officers executing search warrants on occasion must

22  damage property to perform their duty." *Dalia v. United* States, 441 U.S. 238, 258 (1979). In

23  order to rise to the level of a constitutional violation, the destruction of property must not be

24  reasonably necessary to effectively execute the search warrant. *Pacific Marine Center, Inc. v.*

25  *Silva*, 809 F.2d 1266, 1282 (E.D. Cal. 2011); *see Mena v. City of Simi Valley*, 226 F.3d 1031,

26  [9] Although courts typically consider (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4)
27  futility of amendment in determining whether to grant leave to amend, *Foman v. Davis*, 371 U.S. 178, 182 (1962),
   the Ninth Circuit has held that prejudice to the opposing party carries the greatest weight, *Eminence Capital, LLC*,
28  316 F.3d at 1052.

1041 (9th Cir. 2000) ("[O]nly unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment.") Assuming that the California City Police Department has a policy allowing disassembly of household items that could contain controlled substances, and removing clothes from closets, pictures from walls, and groceries from cabinets, that policy would not violate the Fourth Amendment.

Plaintiffs' have failed to adequately allege or present evidence to support a *Monell* claim. Based on the evidence submitted, allowing Plaintiff to amend would be futile. Leave to amend will be denied and Plaintiffs' *Monell* claim – to the extent that it was ever alleged to begin with – is adjudicated in favor of Defendants.

B. § 1983 Fourth Amendment Claim Against Individual Defendants

Plaintiffs appear to contend that the remainder of their first cause of action alleges that the individual defendants violated the Fourth Amendment when they (1) unlawfully searched the Neal home, (2) conducted a pat down search upon Mrs. Neal, (3) destroyed Plaintiffs' property during both searches, and (4) arrested Mr. Neal without a warrant or probable cause.

1.   Unlawful Search of Home

Although the first inquiry in an § 1983 suit "is [generally] whether the Plaintiff has been deprived of a right secured by the Constitution and laws," *Baker v. McCollan*, 443 U.S. 137, 140 (1979), Defendants assume a violation attaching to each named defendant and contend that they are entitled to qualified immunity. Accordingly, as to this claim, this Court will only address whether the individual defendants are entitled to qualified immunity.

The qualified immunity analysis also begins with an inquiry into whether, "taken in the light most favorable to the party asserting the injury, … the facts show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Wood v. Moss*, --- U.S. ----, 134 S.Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al–Kidd*, 563 U.S. ----, 131 S.Ct. 2074, 2080 (2011)). If the answer to the first question is yes, the court then determines "whether the right was clearly established," and applies an "objective but fact-specific inquiry." *Inouye v. Kemna*, 503 F.3d 705, 712 (9th Cir. 2007); *see Saucier*, 533 U.S. at 202. However, district courts

1   need not rigidly adhere to the order imposed by the *Saucier* protocol; "district courts [are]

2   permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

3   immunity analysis should be addressed first in light of the circumstances in the particular case at

4   hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This Court needs only to address the

5   second prong.

6        The critical question for the second prong of the *Saucier* protocol is whether "the

7   contours of the right were sufficiently clear that a reasonable official would understand that what

8   he is doing violates the right." *Saucier*, 533 U.S. at 202; *Friedman v. Boucher*, 580 F.3d 847, 858

9   (9th Cir. 2009); *Inouye*, 504 F.3d at 712. Whether a right is clearly established must be

10  "undertaken in light of the specific context of the case, not as a broad general proposition."

11  *Saucier*, 533 U.S. at 201; *Bingue v. Prunchak*, 512 F.3d 1169, 1173 (9th Cir. 2008). If the officer

12  could have reasonably, but mistakenly, believed that his conduct did not violate a clearly

13  established constitutional right, then the officer will receive qualified immunity. *See Saucier*, 533

14  U.S. at 205–06; *Johnson v. County of Los Angeles*, 340 F.3d 787, 794 (9th Cir. 2003).

15       "'Where an officer has an objectively reasonable, good-faith belief that he is acting

16  pursuant to proper authority he cannot be held liable if the information supplied by other officers

17  turns out to be erroneous.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008)

18  (quoting *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir.2005) (en banc), rev'd on other grounds

19  by *United States v. King*, 687 F.3d 1189 (9th Cir.2012) (en banc)). To shield an officer from

20  liability, the reliance must be objectively reasonable. Id. Officers conducting a search "have an

21  ongoing duty to make appropriate inquiries regarding the facts received." *Motley*, 432 F.3d at

22  1081. The Ninth Circuit has found that a searching officer's duty is satisfied when, on the

23  morning of the search, he or she receives information from other officers confirming that the

24  subject of the search is on parole (or probation or PRCS), regardless of whether that information

25  turns out to be erroneous. *Id.* at 1082.

26       In this instance, at some time prior to the April 5, 2013 search, Defendant Hayes received

27  information tending to indicate that Mr. Neal was on PRCS. Then, on the day of the search,

28

1   Defendant Hayes and possibly Defendants Morgan or Bishop, confirmed with Ms. Jones, the

2   California City police dispatcher, that Mr. Neal was on PRCS. Ms. Jones confirmed with the

3   databases at the disposal of the California City Police Department – as she was taught to do by

4   the probation department – that Mr. Neal was on PRCS and conveyed that information to the

5   officers. That information was erroneous but the error was not knowable by Ms. Jones or any of

6   the officers involved in the search. Because Mr. Neal's status was confirmed immediately before

7   the search with the dispatcher who was known to have access to the most up-to-date PRCS

8   information, the Defendants' reliance on that information was objectively reasonable.

9   Defendants reasonably, but mistakenly believed that they did not violate clearly established law.

10  As a result, Defendants are entitled to qualified immunity with regard to the April 5, 2013

11  search.

12        As to the second search, Defendants executed a search warrant to search Mr. Neal's

13  house on September 19, 2013. JSUF at ¶ 6. Plaintiffs now contend that Defendants "have not

14  established … that the warrant … was in fact issued by Judge C. Woodward" because it is not

15  certified or otherwise authenticated. Doc 39 at 6. Whether the warrant attached as Exhibit 11 in

16  support of Defendants' motion for summary judgment is authentic is not dispositive. Defendants

17  have offered deposition testimony by Defendant Hightower that a search warrant to search the

18  Neal home was obtained based on a controlled drug buy from, wherein Mr. Neal sold a small

19  amount of rock cocaine to a police informant. Deposition of Jesse Hightower, Doc 38-8

20  ("Hightower Depo.") at 14:9-15, 15:15-19:10. That warrant authorized the search of the Neal

21  house. Regardless of whether Exhibit 11 is authentic, there is undisputed evidence in the record

22  that law enforcement sought, obtained, and executed a warrant authorizing search of the Neal

23  house.

24        As earlier noted, qualified immunity protects government officials who act in a

25  reasonable manner. *Ashcroft v. al-Kidd*, 131 S.Ct. at 2074. "Where the alleged Fourth

26  Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral

27  magistrate has issued a warrant is the clearest indication that the officers acted in an objectively

28

reasonable manner or, as [the Supreme Court has] sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, --- U.S. ----, 132 S.Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922–923 (1984)). An exception exists, however, "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue...." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Based on Defendant Hightower's controlled buy, giving probable cause for issuance of a warrant, the officers acted in reasonable good faith upon that warrant and are entitled to qualified immunity.

2. Unlawful Search of Person

Planitiff Cordelia Neal contends that Defendant Morgan subjected her to an unreasonable search when he performed a pat down search on her during the April search. Compl. at ¶ 21; *but see* C. Neal Depo. at 29:2-21 (alleging that Defendant Morgan searched Mrs. Neal searched during both the April and September searches) [10]; *contra* Morgan Depo. at 38:25-39:9. Mrs. Neal indicated that the pat down came about because she told the officers that she needed to use the restroom. C.Neal Depo. at 32:18-22. Defendant Morgan then told Mrs. Neal that he had to pat her down before he would permit her to reenter the house and use the restroom. C.Neal Depo. at 29:6-7. Mrs. Neal protested having Defendant Morgan conduct the search because he was male and she was a female wearing only a nightgown and a robe. C.Neal Depo. at 31:22. Mrs. Neal eventually permitted the search. She describes that Defendant Morgan required her to place her hands on her walker, patted her down between her legs, under her shoulders, and under her breasts, all using the front of his hands. C.Neal Depo. at 31:16-32:3. Defendant Morgan never grabbed Mrs. Neal and the search took only "[a] few seconds." C.Neal Depo. at 32:4-10.

The manner in which the pat down was conducted (i.e., patting the outside of Mrs. Neal's clothing) does not appear unreasonable or inappropriate. However, even a reasonably conducted search can violate the Fourth Amendment when no cause to perform the search exists. In this case, the warrant – authentication issues aside – allowed for search of the person of James Neal,

---

[10] Further muddying the waters, Mrs. Neal indicated that she sought to use the restroom after the K-9 unit exited her house. According to the evidence submitted, a K-9 unit was only present at the September search.

1  his home, and the surrounding yards, garages, outbuildings, et cetera. Doc. 38-15 at 16-18. The

2  warrant at issue did not authorize search of Mrs. Neal or her son. Nor have defendants submitted

3  any evidence that would tend to indicate that probable cause to search Mrs. Neal existed.

4     Even in the absence of probable cause, law enforcement is permitted under *Terry v. Ohio*,

5  392 U.S. 1, 21, 30 (1968) and its progeny, to conduct an investigatory stop and frisk of a suspect

6  provided that the officer has a reasonable suspicion, based on specific and articulable facts, that

7  the person to be detained is engaged in criminal activity. The *Terry* Court noted that "in

8  justifying the particular intrusion the police officer must be able to point to specific and

9  articulable facts which, taken together with rational inferences from those facts, reasonably

10  warrant that intrusion." *Id.* at 21; *see United States v. Cotterman,* 709 F.3d 952, 968 (9th Cir.

11  2013). "The 'narrow scope' of the *Terry* exception only permits a frisk for weapons based on 'a

12  reasonable belief or suspicion *directed at* the person to be frisked....'" *United States v. I.E.V.*, 705

13  F.3d 430, 437 (9th Cir. 2012) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 94 (1979)).

14     Defendants have presented no evidence to suggest that officers thought that Mrs. Neal

15  had committed any crime or that she was carrying any concealed weapon. In fact, waiting until

16  approximately an hour and a half into the search of the residence is complete inconsistent with

17  Defendants having any suspicion that Mrs. Neal was armed.

18     Although not asserted by Defendants, to the extent that the pat down may have been

19  premised on Defendants' belief that Mrs. Neal was concealing or sought to destroy evidence, no

20  search was justified. "A frisk is not valid if it is a general exploratory search motivated out of a

21  desire 'to prevent the disappearance or destruction of evidence of crime.'" *United States v.*

22  *I.E.V.*, 705 F.3d 430, 433 (quoting *Terry v. Ohio*, 392 U.S. at 29).

23      Defendant Morgan is not entitled to qualified immunity as to this claim. A reasonable

24  officer under the circumstances would have known that a search without probable cause or

25  reasonable suspicion would violate Mrs. Neal's Fourth Amendment right to be free from

26  unreasonable searches.

27     3.  Unlawful Destruction of Personal Property

28

Plaintiffs contend that Defendants, in executing both searches, unnecessarily destroyed Plaintiffs' property in violation of the Fourth Amendment. However, Defendants correctly note that Plaintiffs' complaint is devoid of any allegations that Defendants' destroyed Plaintiffs' property during either search of the Neal home. As explained earlier, "[a]n addition of new issues during the pendency of a summary judgment motion can be treated as a motion for leave to amend the complaint." *Kaplan*, 49 F.3d at 1370 (citation omitted). This Court will grant leave to amend, based on the evidence submitted, if such amendment is not futile, *See Lopez*, 203 F.3d at 1130 (citations omitted), and it does not prejudice the Defendants, *Eminence Capital, LLC*, 316 F.3d at 1052.

The Fourth Amendment protects against unreasonable seizure or destruction of property. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027-1028 (9th Cir. 2012); *see San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) ("*Hells Angels*") ("[T]he destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure ... in their effects' as does the physical taking of them.") (citation omitted).[11] Any meaningful governmental interference with a possessory interest in property triggers the reasonableness requirement. *Id*. at 1028, 1030 (quoting *United States v. Jacobsen*, 446 U.S. 109, 113 (1984). Courts "look to the totality of the circumstances to determine whether the destruction of property was reasonably necessary to effectuate the performance of the law enforcement officer's duties." *Hells Angels*, 402 F.3d at 975. "A seizure  becomes unlawful when it is more intrusive than necessary." *Id.* (internal quotation marks omitted); *see United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) ("[W]hile the destruction of property in carrying out a search is not favored, it does not necessarily violate the [F]ourth [A]mendment.") (citation omitted). To determine the reasonability of a seizure the court balances "the nature and quality of the intrusion on [plaintiffs'] Fourth Amendment interests against the countervailing governmental interests at stake." *Hells Angels*, 402 F.3d at 975 (internal quotation marks

---

[11] The Ninth Circuit has alternatively considered allegations of destruction of property during the execution of a search warrant as an unreasonable search rather than a seizure. *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997); *see United States v. Ankeny*, 502 F.3d 829, 837-838 (9th Cir. 2007). Regardless of the nomenclature, the standard is the same.

14

omitted). Because this litigation is now at the summary judgment stage, this Court must view the facts in the light most favorable to the Plaintiffs in determining whether damaging Plaintiffs' property was reasonably necessary to effectuate the search.

It appears that the parties dispute the extent of the damages to Plaintiffs' property. Specifically, Plaintiffs contend that Defendants

> emptied containers of foodstuffs including flour, sugar and cereal in the kitchen, dumping them and making them unusable. They dumped items and clothing out of chests of drawers, destroyed pillows, broke pictures that had been hanging on walls, destroyed clothing as well as the Plaintiffs' son's toys, broke dishes and damage furniture. They also destroyed a brand new clothes washer and dryer as well as other appliances. They also damaged electronic devices and light fixtures.

Doc. 39 at 7; *see* C.Neal Depo. at 47:12-53:17. Based on Mrs. Neal's testimony, it also appears that officers forced open her fire safe, destroyed several of her son's video game systems and a set of walkie-talkies, disassembled both of Mrs. Neal's police scanners, broke the glass on and pried open the top of her electric stove. C.Neal Depo at 50:12-52:2. Defendants claim that the damage now claimed is inconsistent with the list of items submitted with the government torts claim submitted regarding the September 19, 2013 search. *See* Doc. 38-17 (providing a laundry list of damaged and destroyed items). This Court disagrees; the list of items damaged is largely consistent with the Mrs. Neal's deposition testimony. Further, Defendants contend that the damage was minimal by referring the Court to Defendant Hightower's account of less severe damage:

> Q. Tell me about the damage.
> A. From what I saw when I walked through, I saw a broken picture frame. I know the washer had been bent. The back of the washer had been bent back so somebody could look inside, and then I saw some type of air vent or I guess you call it a register where the air comes. I guess the vent was partially bent.
> Q. Any other damage?
> A. Not that I saw.
> Q. Were items taken out of closets?
> A. I would hope so.
> Q. And were they placed back or just thrown on the ground?
> A. That, I don't know.
> Q. And how about were items taken out of like drawers and cabinets?
> A. I would assume yes.

Q. And do you recall if those were replaced?
A. I don't know.
***
Q. Were items taken out of the kitchen cabinets?
A. Probably.
Q. Okay. Do you recall any broken kitchen items?
A. No.

Hightower Depo. at 27:19-28:11, 29:3-7. However, the photographs submitted along with Defendant Hightower's report – although presented only in thumbnail size and only in black and white – tend to indicate that the damage to the Neal home may have been more extensive than Defendant Hightower remembered. Moreover, as Defendants have noted, "Defendant Hightower was not involved in the … incidents of April 5, 2013," DSSUF at ¶8, therefore he could not have witnessed any of the damage to the Neal home arising from that incident. Because the extent of the damage is in dispute, the Court will assume all of the damage that Mrs. Neal alleges in determining whether the property damage was more than reasonably necessary to effectuate the search.

Narcotics, by their nature, are incredibly easy to hide and can be hidden virtually anywhere. *See Vale v. Louisana*, 399 U.S. 30, 34 (1970). It is not unreasonable for law enforcement officers to believe that a search may need to be thorough to find evidence of narcotic sales. *See, e.g.*, *California v. Carney,* 471 U.S. 386, 388 (1985) (drugs found in cupboards and refrigerator); *United State v. Washington,* 2012 WL 3638227, *7 (E.D. Cal. Aug. 22, 2012) (noting that drug dealers often hide contraband throughout their residences); *Davis v. Cavazos*, 2012 WL 3237443, *1 (S.D. Cal. Aug. 7, 2012) (drugs and proceeds from sale kept in safe) *see also Jackson ex rel. Jackson v. Suffolk County*, ---F.3d----, 2015 WL 728249, *9 (E.D. N.Y. 2015) ("The reasonableness of the damage must be evaluated with reference to the target of the search, such as a more invasive contraband search.") That said, simply because officers are conducting a – necessarily broad – narcotics search does not authorize them to ransack a home and indiscriminately destroy its contents. *See United States v. Philips*, 588 F.3d 218, 223 (4th Cir. 2009) ("While officers are afforded some margin of error in conducting a search, that tolerance of imperfection does not give officers "free rein to ransack.")

Defendants have submitted no evidence regarding their purpose in disassembling Plaintiff's washing machine and dryer, cutting holes in their sofas and pillows, or pulling clothing from drawers. Although a jury could find that those activities were an appropriate means of effectuating a the search, it could just as easily find that Defendants' conduct were unnecessary to conduct the search. Further, it is unclear to this Court how disassembly of video game systems and police scanners, breaking of picture frames (during both searches), or forcibly opening a safe despite Plaintiff offering the key, were reasonably necessary to conduct the search. Accordingly, viewing the evidence presented in the light most favorable to Plaintiff, the Court cannot determine that a Fourth Amendment violation for unlawful seizure did not take place based on Defendants' conduct in unnecessarily destroying or damaging property during the search. *Cf. Jackson ex rel. Jackson*, 2015 WL 728249, *9-10 (denying summary judgment on a similar claim of unnecessarily destroyed property where Plaintiff presented photographs depicting "flipped and cut furniture, a disassembled coat rack, property strewn across the floor of the basement, damage to ceramic bowls and a bird feeder stand, damage to picture frames, a scratched end table, and marks to backs of leather furniture.")

The finding that a Fourth Amendment claim may exist is not the end of the inquiry; Defendants may be entitled to qualified immunity. Clearly established Ninth Circuit law provides that "relatively minor destruction of property in executing a search warrant" is not unreasonable for purpose of the Fourth Amendment. *Pacific Marine Center, Inc. v. Silva*, 553 Fed.Appx. 671, 674 (9th Cir. 2014) (citing *United States v. Becker*, 929 F.2d 442, 446-447 (9th Cir. 1991); *United States v. Offices Known as 50 State Distribuiting Co.*, 708 F.2d 1371, 1376 (9th Cir. 1983)). The Ninth Circuit has found law enforcement destruction of property to be reasonable where officers: ripped wires from a surveillance system before seizing that device and threw files from filing cabinets despite the owner's offer to find what the officers sought, *Silva*, 553 Fed. Appx. at 1282; and destroyed a freshly laid concrete slab to search for controlled substances, *Becker*, 929 F.2d 442, 446-447. However, where items that were clearly not the subject of the search or even related to the search have been destroyed in a narcotics related

searches, courts in this circuit have refused qualified immunity. *Kephart v. City of Bakersfield*, 2005 WL 1704463, \*22 (E.D. Cal. 2005) (denying qualified immunity where officers destroyed such as baseball cards, collector planes, photographs, and CDs without explanation during a drug search); *see also Hells Angels*, 402. F.3d at 974 (denying qualified immunity where officers cut a mailbox off its post, jack-hammered a sidewalk, and broke a refrigerator, all for the purpose of collecting Hells Angels indicia); *Miale v. Tuolumne County Sheriff's Dept.*, 2009 WL 3073922, \*5 (E.D. Cal. 2009) (denying qualified immunity where the plaintiff alleged that officers destroyed unlocked doors and one officer stole his dog during a weapon and drug search).

In this instance, there is sufficient evidence to suggest that law enforcement officers destroyed property unrelated to the purpose of the search – discovering evidence of narcotic sales. A reasonable officer in that situation would know that his conduct was violative of Plaintiffs' rights. As a result, allowing amendment would not be futile. Further, because Defendants already deposed Mrs. Neal regarding the damage to her home, and presumably do not need to conduct any further discovery on the issue, they will not be prejudiced by allowing amendment. Accordingly, Plaintiffs will be granted leave to amend their complaint to assert a claim for unlawful seizure in violation of the Fourth Amendment.

4.   Unlawful Arrest of Mr. Neal

After law enforcement officers discovered a controlled substance during the April 5, 2013 search, they placed Mr. Neal under arrest. Plaintiffs appear to have conflated a state law claim for false arrest and a Fourth Amendment claim pursuant to § 1983 (or possibly Plaintiffs intended not to contest summary judgment, or didn't intend to allege a § 1983 unlawful arrest claim in the first instance). Assuming that Plaintiffs oppose summary judgment as to the § 1983 claim for arrest in violation of the Fourth Amendment, the Court rejects that position.

In the criminal context, the fruit of the poisonous tree doctrine, also known as the exclusionary rule, generally operates to exclude evidence obtained in violation of the Fourth Amendment. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). In the Section 1983 context, district courts in the Ninth Circuit – including this Court – have uniformly held that the

exclusionary rule does not apply. *Fowler v. California Highway Patrol*, 2014 WL 1665046, *10 (N.D. Cal. Apr. 25, 2014) (citing, *inter alia*, *Smith v. Kelly*, 2013 WL 5770337, *9-14 (W.D. Wash. Oct. 24, 2013) (collecting cases rejecting the application of the exclusionary rule in the Section 1983 context)); *Willis v. Mullins*, 2014 WL 1643578, *3 (E.D. Cal. 2014). Accordingly, evidence obtained in violation of the Fourth Amendment is not excluded from consideration in a Section 1983 action when determining whether the officer had probable cause for an arrest. *See Lingo v. City of Salem*, 2014 WL 1347468, *9 (D. Or. Apr. 4, 2014). As a result, despite fact that the initial search of Plaintiffs' residence was in violation of the Fourth Amendment, the evidence of the commission of a crime obtained as a result of the unlawful search operated as probable cause for an arrest.

Summary judgment is granted for Defendants as to this issue.

C. Plaintiffs' State Law Claims

Mr. Neal has alleged two state law causes of action: (1) false imprisonment / false arrest and (2) abuse of process. Summary judgment as to both claims will be granted in favor of Defendants.

1.   False Imprisonment / False Arrest

Plaintiff's Second Cause of action "for false imprisonment" appears to allege that Defendants are responsible for Mr. Neal's arrest and imprisonment because officers knew that there was no probable cause to arrest because they had "no objective belief that he had committed a crime." Compl. at ¶29.[12] Defendants contend that they are entitled to summary judgment on this claim because probable cause to arrest existed at the time of arrest.

California Penal Code Section 847(b)(1) provides that a law enforcement officer acting within the scope of his or her authority is immunity from civil suit for false arrest "where the arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." As discussed above, law enforcement's discovery of the controlled

---

[12] In Plaintiffs' opposition they contend that a question of fact exists as to whether law enforcement planted the controlled substance located during the April 5, 2013 search. Plaintiffs make that argument for the first time in their opposition and provide no evidence to substantiate it. This unsupported argument is rejected.

1   substance during the search was sufficient to establish probable cause to arrest Mr. Neal.

2   Moreover, even if the lawfulness of the initial search was at issue – which it is not in this claim –

3   at the time of the search, law enforcement had conducted multiple – albeit erroneous – checks of

4   Plaintiff's PRCS status with positive results. Defendants had reasonable cause to believe that the

5   arrest was lawful. Defendants are entitled to statutory immunity under Section 847(b)(1).

6       2.   Abuse of Process

7       Plaintiffs third cause of action alleges "abuse of process against all defendants." Compl.

8   at p. 8. Defendants moved for summary judgment because (1) Defendants initiated and served no

9   process on Plaintiffs, (2) because, even if they had, Defendants are immunized against such a

10  claim, and (3) because Plaintiffs failed to allege this claim in their Government Claims Act

11  claims. Plaintiffs did not oppose Defendant's motion as to this claim. Accordingly, Defendants'

12  motion is granted; Plaintiffs' abuse of process claim is adjudicated in Defendants' favor.

13

14                              **V. Order**

15      Based on the foregoing, IT IS HEREBY ORDERED THAT:

16      1.  Defendants' motion for summary judgment as to Plaintiffs' first cause of action for

17          violation of the Fourth Amendment, brought pursuant to § 1983

18              a.  is GRANTED and that cause is adjudicated in favor of Defendants insofar as

19                  it is based upon any alleged policy of violation of the Fourth Amendment by

20                  the City, either search of the Neal home, or Mr. Neal's arrest and

21                  imprisonment;

22              b.  is DENIED insofar as it is based upon the destruction of property in the Neal

23                  home during either search, or the unlawful search of Mrs. Neal;

24      2.  Defendants' motion for summary judgment as to Plaintiffs' second cause of action for

25          false arrest or false imprisonment is GRANTED;

26      3.  Defendants' motion for summary judgment as to Plaintiffs' third cause of action for

27          abuse of process is GRANTED;

28

4. Plaintiffs are granted leave to amend their complaint to allege that Defendants' destroyed Plaintiffs' personal property during the search of the Neal home in violation of the Fourth Amendment;

   a. Any such amendment must be made with 10 days of the date of this order. Failure to file an amended complaint will result in that claim being adjudicated in favor of Defendants and Plaintiffs' being permitted to proceed only as to Mrs. Neal's claim that a pat down search was performed upon her in violation of the Fourth Amendment;

5. In light of the Court's authorization for Plaintiff to file an amended complaint, the pretrial conference presently scheduled for July 29, 2015 is hereby rescheduled to August 12, 2015 at 10:00 a.m.  Further, the Court will hold a telephonic status conference with counsel for both parties on July 22, 2015 at 2:00 p.m. The parties may contact courtroom deputy Renee Gaumnitz at (559)499-5660 for instructions on placing the July 22 status conference call. During the July 22 conference call the parties should be prepared to apprise the Court of how each wishes to proceed in this matter.

IT IS SO ORDERED.

Dated:   July 10, 2015 _____

_____
SENIOR  DISTRICT  JUDGE